Case number 112214, People v. Douglas Tate. Agenda number three. Counsel for the appellant. Good morning, your honors. Dan Alexander for Douglas Tate. May it please the court, counsel. Your honors, Douglas Tate is innocent of the crime that he was convicted of. We have to ask ourselves, when this happens, what went wrong? Something went wrong. Unless we think of the criminal justice system as a complete crapshoot, when an innocent person is convicted, something went wrong. And if we look at our experience, if this court looks at its experience, it's usually a combination of things that go wrong. There could be a suggestive ID procedures that the police invoke. There could be a Brady violation. There could be a coerced confession. But if you think about it, your honors, it almost always is combined with bad lawyering. Maybe not always, but often it is combined with bad lawyering because what we've learned is that good lawyering can pull the veil off a flimsy case, can pull the veil off a suggestive ID. Suggestive IDs can be challenged. Flimsy eyewitness testimony can be challenged. But lawyers have to do a good investigation and they have to do good cross-examination. That's how the criminal justice system works when it works right. In this case, sadly for Douglas Tate and his family, it did not work. And your honors, because there's usually a combination of things that go wrong combined with bad lawyering, that's why this court's decision in Hobley should be overturned. And I'm talking, of course, about the freestanding rule that if you bring a freestanding claim of innocence, you can't bring it with another claim. You can't use the same affidavits to support another constitutional claim. And that makes no sense, your honors. That's why we're asking the court to overturn it. If there was a Brady violation and that's what caused this conviction, but the lawyer didn't investigate it, didn't bring it out, the same affidavit showing the Brady violation could also be used to show that the lawyer failed in his job, didn't do his job properly. So one of the things we're asking the court to do is to overturn this and to reach back to Washington, to the Washington decision that said it's unconstitutional under Illinois, it's a due process violation under the Illinois Constitution to have an innocent person convicted of a crime. There's nothing in Washington that says it has to be freestanding. That was picked up in Hobley and it's been picked up in a couple of other decisions and I'm suggesting to the court that there's no logical or constitutional basis for that distinction and that this is an opportunity to change that. And as I've talked about in the briefs, your honors, it looks like the appellate courts are already doing just that. You see courts trying to reach around that Hobley rule saying that, well, we'll send the case back on just the actual innocence, but everything goes back because it's a post-conviction petition, so everything goes back to the lower court. So now is an opportunity for the court to clarify this, to get rid of this rule that makes it, can make it very difficult or impossible for people who are wrongly convicted to challenge their convictions. Your honors, Douglas Tate filed a post-conviction petition. We put, in there we have affidavits of two new occurrence witnesses and two alibi witnesses, and the these affidavits show that Douglas Tate could not have committed the murder for which he was convicted. Excuse me. Under this court's decision in Ortiz, Ortiz said, you know... Back to the actual innocence claim for a minute, the whole Washington and Hobley thing. Yes, your honor. We agree with you on the first issue. Do we necessarily even get to that? I know you want us to get to that. Oh, if you agree, you mean if you agree with me on the... Ineffective assistance claim? On the ineffectiveness claim. I think the case would go back on all the bases under the law, your honor, so I'm not sure that the court would get to that, but it's going to keep coming up, and I would suggest that this would be a good opportunity to clarify the law on the issue, because the court kind of addressed it tangentially in Pitzenbarger saying that the real significance of a freestanding claim of actual innocence is that you don't need to pass the cause and prejudice test to file, you know, more than one of subsequent post-conviction petitions, and so I would suggest this is an opportunity to address that, but I believe the law is that if the court reverses and sends back the PC to the trial court, it goes back on all bases. Didn't the defendant raise ineffective assistance of counsel on direct appeal? Yes, your honor. Douglas Tate did raise that on direct appeal, but we didn't have the affidavits. The affidavits were not part of the record. If, thinking ahead, if the court is thinking about the race judicata issue, I think the case law is clear that where there's affidavits that were not a part of the record... Wouldn't there have to be newly discovered evidence? For which one, your honor? For the actual... The affidavits, the affidavits. Wouldn't there have to be an allegation of newly discovered evidence? For the actual, for actual innocence, it does have to be newly discovered, but not for ineffectiveness, your honor, is my understanding of the law. Is your point that the attorney, there was a lack of diligence in his investigation once seeing Hebron's name in the police report? Is that where you're coming from here? For Stephen Hebron's affidavit, your honor? Yes, your honor. I would say definitely. You know, the state raises, they raise repeatedly that this was a strategic choice. You know, it's the old common way to defend yourself from a defeat and ineffectiveness claim. Well, it was all trial strategy. But the case law is very, very consistent that if the lawyer does not investigate, that that strategy does not apply. The strategy rationale does not apply. And here, there was no investigation whatsoever, even though Hebron's whereabouts were known. So it wasn't enough for the attorney to not see anything in the police report from Hebron that would exonerate the defendant, that he had a duty to investigate just by the mere fact that the police report mentioned his name. Correct, your honor. I believe he did. This was in the police reports. This person was on the scene, and his whereabouts were known. And I believe he did have a duty to investigate, your honor. I mean, this is a situation where the defense attorney put on no witnesses. There was almost no defense. I mean, he stipulated to most of the things that the prosecution needed to prove, and there was no defense put on whatsoever, and there was no investigation. What about the appellate court's take that that could have been raised on direct appeal since his name was in the police report? I'm sorry, sir, I didn't hear the first part. What about the appellate court's take that that could have been raised on direct appeal since Hebron's name was in the police report? Well, your honor, I think that's mistaken because of the case law saying that we don't know for sure if Hebron would have come clean with his witness account of the slaying. We didn't know that until we got an affidavit from him, which was after the fact, after the direct appeal. And the direct appeal, obviously the affidavit was not a part of the record, so I did the direct appeal. I couldn't use the affidavit. I didn't have the affidavit, so there was no way that I could have raised this eyewitness account of the murder on direct appeal. And under the case law, there's no res judicata. In fact, the state doesn't even, in my reply brief, I'm sure the court saw, the state isn't even asking this court to affirm on the res judicata grounds that the appellate court brought up in its order. It's asking the court only to say that we waived it by not putting it in a post-trial motion, when they never raised that. The first time they're ever raising a waiver from not putting it in a post-trial motion is in front of this court. So actually the state's argument is waived, and I think the weakness of the appellate court argument is shown by the fact that the state isn't even asking this court to use the appellate court argument on res judicata to affirm. And I would just like to touch on one thing, Your Honor. The state is, what the state's asking the court to do here is, simply because Mr. Tate has an attorney at the first stage of post-conviction proceedings, they're asking this court to abrogate the statute on post-conviction and essentially squash it down into a two-stage process if a client is represented by counsel. Saying that we have to basically put everything on the table, everything will be construed against us, and we have to have every single basis of every single constitutional argument laid out at the first stage of the post-conviction proceedings. And there's no basis for the court to do that. Number one, the case law is clear under Hodges. This court laid out the rule that we only have to have an arguable basis that our argument is not frivolous or patently without merit. And that's a very low standard, obviously, at the first stage of post-conviction proceedings. And Hodges explained that this has nothing to do with the gist standard. The gist standard is only that when you've got pro se defendants, they don't necessarily have to cite to legal authority and use the red book or whatever to cite to cases. That has nothing to do with this appeal. It's a total red herring, because we did cite to legal authority. So all we're asking the court to do is follow its precedent in Hodges. All we have to show at this point is an arguable basis that our constitutional claims are not frivolous or patently without merit. And so factual allegations meet that test under this court's ruling in Hodges if they're not fantastic or delusional. I don't know how the state can argue that our factual claims here are fantastic or delusional. The appellate court saw fit to parse the affidavits and actually make credibility determinations of the witnesses. Completely improper at this point, Your Honors. How does the issue of race judicata factor into that low standard that you're talking about, an arguable basis? Well, I believe that the court has addressed that in other opinions where, I have it over here, I don't have it right here, Your Honor, but where it said that race judicata can be a defense at the first stage of post-conviction proceedings. The court has decided that, and we're not arguing that at this point, Your Honors. But here we have a case where under the case law, race judicata clearly does not apply because we have affidavits outside of the record. The state is not even asking this court to affirm based on the appellate court's interpretation of race judicata. And the only argument they're asking is waiver that they've already waived. So it's really a non-issue, I would say, in answer to your question, sir. As far as the legal theory, under Hodges, we just have to show that we don't have an indisputably meritless legal theory. In other words, as Hodges said, a theory that's completely contradicted by the record. And here, clearly, we don't have a theory that's completely contradicted by the record. We've got new eyewitnesses to this case that are saying this killing, let's say our client didn't do it. Douglas Tate was not the murderer. He wasn't even on the scene. And if the court looks at the Ortiz opinion, it's all laid out. I believe Ortiz controls on that issue, which would also satisfy the prejudice prong of Strickland. Because in Ortiz, you have basically the same situation where you have a new eyewitness, a new affidavit that contradicts the state eyewitness. And this court said, that right there meets the prejudice challenge of Strickland. Even if you don't believe it, it could be doubtful. It could be a witness that you don't think will abrogate the state's witnesses. But it's not delusional. It's not completely contradicted by the record. And that's where we are at this first stage of post-conviction proceedings. That's all we have to show. And the state raises the specter that, you know, the court should collapse the post-conviction process into essentially two stages, if attorneys are involved, to avoid this ghost writing by attorneys. But that would only encourage ghost writing. Because, you know, even though Doug Tate's petition was attorney-prepared, it's still very important to be able to amend at the first stage. That's one of the things about the first stage. It's not easy to go out and find these witnesses and get affidavits. And at the post-conviction, at the first stage, we have the ability to amend our petition and our affidavits as we move into the second stage. And that's very important. And under the state's plan, by collapsing that into two stages, attorneys would lose that. Clients represented by attorneys would lose that ability. And that's only going to encourage this ghost writing. Because, I mean, essentially, clients represented by attorneys have a big strike against them. They've got to get everything laid out, all their ducks in a row at the very first stage. And everything has to be perfect at the first stage. That's a good reason for pro se litigants to do it themselves. So I'll just sum up, see if the court has any more questions. The four affidavits we've put out, plus Mr. Tate's affidavit, equals five. But the four other witnesses we put out show that Mr. Tate could not have been the murderer. And these are not fantastic allegations. They're not delusional. Obviously, our legal theory is not indisputably meritless. It's arguable. There could be arguments on the other side. I don't deny that. But we're not at that stage yet. So the appellate court clearly erred. The trial court clearly erred when it summarily dismissed the petition. Five days after I filed it, no written order, no findings of fact. And then the appellate court affirmed on very questionable grounds, parsing the affidavits and making credibility determinations. And that's not what this court's precedent lays out. So I would ask the court to reverse. Send this back to the trial court for further post-conviction proceedings. There's no further questions. Thank you, counsel. Counsel for the appellate. Mr. Chief Justice, your honors. May it please the court. Cook County Assistant State's Attorney Joseph Alexander on behalf of the people of the state of Illinois. Your honors, this case presents one specific issue. Whether the appellate court properly affirmed the dismissal of defendant's attorney-prepared petition. This issue requires two considerations. First, whether the liberal construction rule applies to attorney-prepared petitions. And second, whether a defendant can use the same evidence to support a freestanding claim of actual innocence, as well as a claim of a constitutional violation at trial. It is the people's position that the appellate court properly affirmed the dismissal of defendant's petition. The liberal construction rule doesn't apply to attorney-prepared petitions. And a defendant cannot use the same evidence to support a freestanding claim of actual innocence and a claim of a constitutional violation. Starting with the liberal construction rule, this rule developed because courts realized that pro se litigants were usually unskilled and untrained in the law. Because of that and because of the court's desire to ensure that these pro se litigants had a fair and meaningful access to the courts, developed the liberal construction rule which held pro se pleadings to a less stringent standard than attorney-prepared pleadings. The courts look at pro se pleadings with the lenient eye. And again, it's to ensure that these pro se litigants don't lose or forfeit potentially legitimate claims because they're not familiar with the technicalities of pleading and the requirements to actually state that claim. Those concerns aren't present when we have an attorney preparing the petition. A defendant represented by the attorney has the skill and the training through that attorney to properly plead. What standard would apply? To an attorney-prepared petition? In the post-conviction context at the first stage, the Hodges standard still applies. We're not arguing that there should be a separate standard. We're simply arguing that attorney-prepared petitions should not be given the benefit of that liberal construction rule which is specifically designed for pro se litigants. Contrary to counsel's argument, this doesn't require collapsing the first and second stage. You still have to meet that first-stage standard of whether this is frivolous and patently without merit, whether you're stating an arguable basis in law and fact. If you do that and get to the second stage based on your properly pled pleading, then you can move on to whether you made a substantial showing. You can amend your pleading, add any other claims, any other factual support that you deem necessary. Moving from that liberal construction rule to the merits of these claims, we're going to look at petitioner's ineffective assistance of counsel claim first. Your Honor, it is our position that that claim has been forfeited because petitioner failed to raise it in his post-trial motion. If you look at the facts of this case, petitioner was represented by private counsel at trial. During post-trial motions, he was represented by, he retained a new attorney. This attorney took four months investigating and drafting a very extensive pleading. In that pleading, in that post-trial motion, she raised numerous claims, including claims of ineffective assistance of counsel based on a witness that was included in one of the police reports. At no time did she raise any claims based on the witness's petitioner, now claims should have been called. And these witnesses were included in the police reports as well. It was at that post-trial stage where the people suggested that she couldn't do that, and counsel vigorously argued that she was bringing issues to the court's attention that weren't brought at the time of trial. And she attached these reports that included all of these witnesses to her post-trial motion, which became a part of the record on direct appeal. All of these witnesses could have been raised. These facts are substantially similar to the case in People v. Stewart, where the defendant hired a new attorney to represent him on post-trial motions, and raised ineffective assistance of counsel claims, and then raised new claims based on people that were listed in those reports. Mr. Alexander, help me understand your argument, because I think that you're saying, well, the names of these witnesses were listed in the police report, right? But there was nothing in the police report that would indicate that those particular witnesses had favorable testimony to offer on behalf of the defendant. Right? In fact, that's, let me just finish, that's the other side of your argument. Your argument is, well, there was nothing, there was no duty on the part of trial counsel to investigate any of those witnesses, because there wasn't any favorable testimony listed. So he made a strategic, she, I guess, made a strategic decision not to move forward and interview some of these witnesses. But now you're using that same fact to say that it should have been raised at the, post-trial stage, that somehow this should have been raised by the attorney saying there was ineffective assistance of counsel, because indeed they didn't look at these witnesses. So I think you're arguing both sides of the coin here, aren't you? Actually, we're not, Your Honor. If we look at the facts of these case, of this case, petitioner is now arguing that he had an alibi. At post-trial, at the post-trial stage, he was represented by this new attorney who spent, again, four months investigating. Now, the source of this alibi is the defendant. He, if he actually had an alibi, he would have told this post-trial counsel who was raising these various issues of ineffective assistance of counsel to raise a claim that my counsel was ineffective for not presenting this alibi testimony. Again, petitioner was, defendant was a source of this information. And if we notice, there is no claim that his post-trial counsel was ineffective. And I think we should take note of that, because it's, this is a very, the facts of this case, they're very unique. And it's difficult in some instances to apply a general standard. So we have to look at these facts and say, if this, he was a source of this information, if counsel spent four months investigating, drafting, and preparing this petition, including claims of ineffective assistance of counsel, based on the failure to call a witness that was listed in the police report, police reports that she attached to her motion that listed all of these witnesses, at some point, especially defendant's girlfriend, who he claims is an alibi, you would think that at some point, the person who had this alibi information in his possession, which is the defendant, would have told counsel, I have an alibi, here she is, she's in the police report, it's my girlfriend, my trial counsel should have called her, at no point, however, did that come into the motion. And because defendant was a source of that information, along with those police reports, he has forfeited that claim under these facts. Again, we have to, if we look at people v. Stewart, we have substantially the same facts. Where this court said, because you didn't raise this in the post-trial motion at your earliest opportunity, it's now forfeited for post-conviction review. Like his claim of ineffective assistance of counsel, which, again, we maintain was forfeited, if we look at petitioner's claim of actual innocence, that claim also has no merit. Before we get into the actual merits of that claim, however, we need to look at the claim of using the same evidence to support both a freestanding claim of actual innocence and a claim of a constitutional violation. Defendant argues that, and I apologize, I'm using defendant and petitioner interchangeably. Petitioner argues that freestanding has no meaning. It's irrelevant now. That is contrary to this court's decision in people v. Washington. If we look at that case, there was a very specific and logical reason why this court held that Illinois can recognize under its constitution a freestanding claim of actual innocence. A freestanding claim of actual innocence is based on the definition of actual innocence. We're not talking about legal innocence. We're talking about you are completely exonerated or vindicated. And in Washington we had a defendant who had no other constitutional claim to raise. And this court recognized that in that situation it would be unconscionable to have an innocent person sitting in prison simply because he didn't have a constitutional claim. So this court recognized that you can bring a claim of actual innocence under the Post-Conviction Act. Even though the court recognized that, there were very specific limitations placed on that. Because this court realized that the trial phase is the phase when guilt or innocence should be determined. We're not trying to retry the defendant at every stage of the appellate process. So this court set out that your claim of actual innocence has to be based on newly discovered evidence that is material and non-cumulative and of such a conclusive nature that it would probably change the result on retrial. If we go to People v. Hobley, where there was a constitutional claim and a claim of actual innocence, this court looked at those claims and said because the defendant had a constitutional claim, they weren't considering his actual innocence claim because he was using that same evidence. There's a very logical reason for that. And this case demonstrates that reason. In this case he's arguing that his attorney was ineffective for not calling these witnesses. He's also arguing that he's actually innocent based on these witnesses. Claim of newly discovered evidence, the evidence is newly discovered, which means it wasn't available at trial or it couldn't have been found with due diligence. If you're arguing that this is newly discovered evidence, then you basically have to disprove your ineffective assistance of counsel claim because if the evidence wasn't available to you and it couldn't have been found with due diligence, then how can your attorney be ineffective for calling unavailable witnesses? And contrary, if your attorney was ineffective for not calling these witnesses because they were known, and as Petitioner concedes in his brief where he readily admits that these witnesses were known to counsel, they were included in police reports, then by those very reasons it can't be newly discovered evidence. So this is one of the reasons you can't use the same evidence to support two different claims. It basically leaves the defendant in the position of disproving one of his own claims. Again, if we look at the merits of that actual innocence claim, and I just went through those, this evidence is not newly discovered, they were all known to the defendant at the time of the trial, or they could have been found with due diligence. More importantly, these witnesses are not conclusive. Counsel stated that these affidavits contradicted the witnesses. Well, contradicting a witness isn't enough at this stage. We, in this case, we have four positive identifications. Four witnesses with substantially the same story who all saw the defendant pull up, as they said, up a gun and shoot the victim. Their testimony is corroborated by the physical evidence, which includes the coroner's report, where the nature of the injuries is consistent with what they saw. The trial court heard all of this evidence, and if we look at this evidence in light of what he has as, and what he claims is newly discovered evidence, you see that this evidence is not conclusive. It's not completely exonerating. Specifically, if we look at Wilson's affidavit, which in no way exonerates the defendant, because Wilson says, I turned around after I heard the shots, and I didn't see the defendant. Well, of course you didn't see the defendant, because as the eyewitnesses said, after he shot the victim, the defendant ran. So based on the reasons that I've stated here today, and the reasons included in our brief, we ask that this court affirm the lower court's decision, which is affirming the dismissal of defendant's post-conviction petition. Thank you. Thank you. Your Honor, I'll start at the end. The physical evidence in this case, which the trial court said was of the utmost importance, the physical evidence corroborated in this case is that somebody shot Maurice Wesley. That's all it corroborates. It does not shed any light whatsoever on who pulled the trigger. There was no physical evidence whatsoever connecting defendant to this crime. The only evidence was these four felons, some of whom didn't even make a statement until the following year after the slaying, were trying to get their cases reduced. One of the witnesses was talked to by God, he says, and had a revelation. He also wanted to work off one of his drug cases. This is terrible evidence. It's very unreliable evidence. There's no physical evidence connecting Doug Tate to this crime. I want to point out one thing I forgot to mention, but it's in my briefs, of course, is these affidavits, in addition to contradicting the witnesses, the state says the affidavits don't contradict the witnesses, not enough at this stage. We have an eyewitness, Hebron, who says he saw the shooter, he was five feet from the shooter, he knows Douglas Tate, and it wasn't Douglas Tate. If that doesn't contradict these four felons, I don't know what does. If you look at Ortiz, that's more than meets our burden. The state says that's not enough at this stage. At the first stage of a post-conviction petition, at what stage would it be enough? Probably never for the state. The affidavits, and I just want to point out, I forgot to mention in my opening statement that under Hodges, the affidavits at this point only need to show that our claims are subject to independent corroboration. That's the purpose of the affidavits at this point. Not to parse them. When somebody says, I was at my girlfriend's house, that means you were at her house, but she wasn't there. Things like that are not appropriate at the first stage of the post-conviction petition. The appellate court, and like the state, saying that Hebron's testimony would not have outweighed the eyewitnesses, or the credibility of the alibi witnesses is very low. Those are not proper things to analyze at the first stage of post-conviction proceedings. The state says the only rationale, the only logical rationale that the state offers for the freestanding requirement on the actual innocence claim, is essentially that you can't do alternative pleading in Illinois. That's what they're saying. I admit that for the ineffectiveness claim, we have to show that some of the evidence could have been discovered, should have been discovered by the trial attorney. And under the actual innocence, we have to show that some of it could not have been discovered. And I think we certainly arguably have that, Your Honors. The alibi witnesses, I think the state is correct. The trial counsel should have known about the alibi witnesses, for sure. Which goes to the ineffectiveness. The Stephen Hebron affidavit, it's arguable at this point that he didn't. That he wouldn't have found that. It's alternative pleading. At the hearing on the post-conviction motion, if the court finds that one of the witnesses the attorney should have found, and one he couldn't have found by the exercise of reasonable diligence, then both claims survive. At this point, we've made the arguable basis. But that's not a logical reason to say that nobody in the state of Illinois can raise actual innocence unless it's freestanding. The state says it's unconscionable to have an innocent person convicted if he has no other constitutional claims. Well, what does that have to do with it? If you look at the Washington decision, it says it's a due process violation under the Illinois Constitution to have an innocent person convicted and in prison. It doesn't say if he doesn't have any other constitutional claims. That's not logical. It makes no sense. The court says, back to the waiver argument, first of all, Stewart, the state relies heavily on Stewart, and we address this in our reply brief. Stewart is a completely different case. Under Stewart, someone pled guilty to a murder and then was sentenced to death and they tried to withdraw their guilty plea. And this court's Rule 604D has a very specific procedure. As the court knows, if you want to withdraw a guilty plea, anything not on the record has to be put on the record or it's deemed waived. That was the rationale of Stewart. Completely different situation. It's a very specific rule that says you have to put extra record stuff on the evidence when you withdraw the plea or you waive it. It has nothing to do with this case. The court says, well, these witnesses were named in the... Our witnesses in the affidavit were named in the police reports and in the post-trial motion that was raised. The main witness raised in the post-trial motion was Ron L. Winfrey. He's not one of the ones we have an affidavit from. The state is trying to mislead the court a little bit there. If you look at the post-conviction petition and you look at the post-trial motion, Ron L. Winfrey was the main thrust of the post-trial motion. None of those affidavits that we've attached existed. They were not on the trial record. They couldn't be argued on post-trial motion. And the state is big on waiver, but they don't address the fact that they themselves waived this argument. It's not until their responsive brief to this court that the state ever raised the issue of waiver based on post-trial motion. In all the briefing, in the direct appeal, in the trial court, they never raised the issue that we waived anything by not putting it in a post-trial motion. So they themselves have waived the waiver issue. And it doesn't matter whether they waived it or not, because it's based on affidavits which are outside the record. And the court says, well, excuse me, I apologize, the state says that we're okay with the Hodges standard. The Hodges standard is okay with us here. But under the Hodges standard, we only have to show an arguable basis, that we're not frivolous or patently without merit. That's not what they want. If you look at how they're parsing the affidavits and arguing, you know, they filed a 50-page brief arguing against our things. I mean, that right there kind of says we've raised an arguable claim. It's not fanciful. It's not completely contradicted by the record. It's not delusional. So, your honors, I think the court looks at the briefs and looks at the facts of this case. It'll be clear that we more than met the standard for the first stage of pleading, the post-conviction pleading. The trial court erred when it summarily dismissed it. Without a word of analysis or fact-finding, or even a court appearance. And this court should remand it for further post-conviction proceedings, if there's no further questions. Thank you, counsel. Case number 112214, People v. Tate, is taken under advisement as agenda number three. The Supreme Court stands in recess until approximately 1105 a.m.